# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CR419-191 |
| | ) | |
| ANTONIO JASPER, | ) | |
| | ) | |
| Defendant. | ) | |

# REPORT AND RECOMMENDATION

Defendant Antonio Jasper moves to suppress the fruits of a search of his car. *See* doc. 16. The Government opposes. *See* doc. 25. On February 18, 2020, the Court held an evidentiary hearing on defendant's motion. At the hearing, the Court heard testimony from Officer Justin Anderson and video footage from Anderson's body-worn camera was admitted without objection. *See* doc. 35. For the reasons explained below, Jasper's motion should be **DENIED**. Doc. 16.

The factual background of this case is straightforward and undisputed. Officer Anderson was on his normal patrol at a hotel in Savannah, Georgia. He testified that he entered the hotel parking lot pursuant to a "Citizen's Agreement." Such agreements, he explained, are arranged between businesses and the police when the business is

concerned about criminal activities on its premises; for example, when a gas station is concerned about loitering or drug transactions.  Anderson testified that the hotel in question requested additional patrols because of a variety of illicit activities, including drug activity and prostitution.

As Anderson drove his car through the parking lot, he observed a car with the driver's door partially open.  An individual appeared to be unconscious in the driver's seat.  He testified that he was immediately concerned that the individual could have been in distress or that a robbery might be in progress.  He approached the car and, without the individual appearing to notice him, collected the license plate number.[1]  He returned to his patrol car and searched the license plate to determine if the car was stolen.  The remaining events were recorded by Anderson's body-worn camera.

The recording commences while Anderson is in his vehicle, and before he has made any contact with Jasper.  The video does not indicate that the individual in the car was unconscious.  On the contrary, it

---

[1] Anderson testified that recording the plate number required him to exit his vehicle because the car in question was backed into the parking space.  The body-cam video of the subsequent events confirms that the car was backed in, but the camera was not activated for the initial license plate check.

captures the individual shutting and then reopening the driver's door before Anderson has made contact. Anderson approaches the car and asks Jasper if he is ok. Jasper's response is not audible. Anderson testified that, as he approached the open driver's door, and before he spoke to Jasper, he smelled burnt marijuana.

Anderson asks Jasper if he has any drugs in the car. Jasper first denies having any, but then admits he has "a little pot" in response to Anderson's repeated question. Anderson asks Jasper to step out of the car and stand against the hood. Jasper complies and Anderson proceeds to visually inspect the interior of the car with his flashlight. Almost immediately he observes a firearm in the footwell of the driver's seat. He removes the gun, makes it safe by removing the magazine, and places Jasper under arrest. A more thorough search of the car and Jasper's person produced additional contraband. *See* doc. 25 at 5.

The sequence of events captured in the recording clearly implicate the Fourth Amendment. Jasper concedes that the initial contact is properly construed as a *Terry* stop. *See* doc. 16 at 2-3. He argues that the justification for such a stop terminated once Anderson discovered that Jasper was not, as he originally thought, unconscious. *Id.* He then argues

that the search of the car is not within any recognized exception to the warrant requirement. *Id.* at 3-4. Finally, Jasper suggests that a warrantless search of the car could not have been permissible because the parking space was "curtilage" of the room his girlfriend purportedly[2] rented and a "vehicle stored within the home's curtilage cannot be searched without a warrant." *Id.* at 5. All of Jasper's arguments miss the mark.

The Court will first consider Jasper's argument that he had a reasonable expectation of privacy in the parking space analogous to the expectation of privacy that a resident has in the curtilage of their home.[3]

---

[2] The Government does not dispute Jasper's claim, in his brief, that his girlfriend was the registered guest in the room in question. As discussed below, the question of her registration is irrelevant to whether Jasper had a reasonable expectation of privacy in the parking lot.

[3] The Government suggests, in response to this argument, that Jasper lacks standing to challenge the search of his car. *See* doc. 25 at 11-13. That argument fails. The Government mistakenly clings to the contours of Jasper's brief by analyzing his standing solely in the context of his hypothetical expectation of privacy in his girlfriend's hotel room. *See id.* at 11. While, as explained below, Jasper does not have any reasonable expectation of privacy related to the hotel room, the Government apparently neglects to consider whether he has a reasonable expectation of privacy in the car itself sufficient to establish his standing to challenge its search. *See, e.g., Byrd v. United States*, ___ U.S. ___, 138 S. Ct. 1518, 1527 (2018) ("One who owns and possess a car . . . almost always has a reasonable expectation of privacy in it."); *United States v. Gibson*, 708 F.3d 1256, 1276-77 (11th Cir. 2013) (even non-owners may have standing to challenge the search of a car they have permission to use). Since Jasper's suppression motion fails on the merits and Fourth Amendment standing is not jurisdictional, the question of his standing is moot. *See Byrd*, 138 S. Ct. at 1530

4

If he had such an expectation, he is correct that any warrantless search of the car would violate the Fourth Amendment. See doc. 16 at 5 (citing *Collins v. Virginia*, ___ U.S. ___, 138 S. Ct. 1663, 1675 (2018)). The "curtilage" characterization is critical to Jasper's argument because *Collins* establishes only that "the automobile exception [to the warrant requirement] does not permit an officer without a warrant to enter a home or its curtilage in order to search a vehicle therein." *Collins*, 138 S. Ct. at 1675. Jasper argues that his connection, *via* his girlfriend, to an adjacent hotel room establishes that the parking space is curtilage. Jasper is wrong.

The Tenth Circuit has succinctly explained, not even a hotel's owner, to say nothing of its transitory guests, has a reasonable expectation of privacy in its open parking lot. *See United States v. Ludwig*, 10 F.3d 1523, 1526 (10th Cir. 1993) ("Neither the owner nor a guest could reasonably expect that such a parking lot would be private," and collecting cases); *see also, e.g., United States v. Washburn*, 383 F.3d 638, 642 (7th Cir. 2004) ("We have always rejected the notion that a hotel occupant enjoys the

---

("Because Fourth Amendment standing is subsumed under substantive Fourth Amendment doctrine, it is not a jurisdictional question and hence need not be addressed before addressing other aspects of the merits of a Fourth Amendment claim.").

same expectation of privacy in his car in the parking lot of the hotel as he does in the room itself; the hotel parking lot is 'readily accessible to the public and not generally thought of as a place normally used as a residence.'" (citation omitted)).  Even without considering the implicit permission of the "Citizen's Agreement," then, there is no question that Anderson's entry of the parking lot did not implicate, let alone violate, Jasper's Fourth Amendment rights.[4]

Even assuming that Anderson's approach of the car did implicate the Fourth Amendment, his fully credible testimony establishes that he had, at least, reasonable suspicion to do so.  Anderson testified that the hotel in question was known to the Savannah Police as a high-crime location.  Anderson testified that his observation of the open car door raised the possibility that it had been broken into.  Those facts are clearly sufficient to establish reasonable suspicion.  *See United States v. Mundy*, 591 F.

---

[4] A police officer needs no level of suspicion to approach an individual in public to put questions to him. *See, e.g., Muhler v. Mena*, 544 U.S. 93, 101 (2005) (quoting *Florida v. Bostick*, 501 U.S. 429, 434, 434-35 (1991)) ("We have 'held repeatedly that mere police questioning does not constitute a seizure,'" and "'[e]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual'"); *see also United States v. Gipp*, 147 F.3d 680, 685 (8th Cir. 1998) (no Fourth Amendment violation where officer approached car to conduct "a 'welfare check'" and smelled burnt marijuana).

6

App'x 320, 323-24 (6th Cir. 2014) (officers who "were patrolling a poorly lit street in a high-crime area, late at night, and saw legs sticking out of an apparently otherwise unoccupied parked car" provided reasonable suspicion). Given Anderson's reasonable suspicion, the initial contact was a perfectly proper *Terry* stop. *See, generally, Terry v. Ohio*, 392 U.S. 1. (1968) (brief investigatory seizure based upon reasonable suspicion of criminality does not violate the Fourth Amendment). There is also no question that those concerns were resolved when it became clear that Jasper was conscious.

Once Anderson approached the car and smelled what he recognized to be burnt marijuana, reasonable suspicion ripened into probable cause. The Eleventh Circuit has held that detection of the odor of burnt marijuana establishes probable cause for a search or seizure. *See Merricks v. Adkinson*, 785 F.3d 553, 560 n. 3 (11th Cir. 2015) ("[T]he smell of burnt marijuana emanating from a vehicle is sufficient probable cause to search a vehicle." (citing *United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991) (*en banc*)); *see also United States v. Johnson*, 2007 WL 2874303, at * 3 (S.D. Ga. Sept. 26, 2007) ("it is clearly established that the recognizable smell of marijuana gives rise to probable cause supporting a warrantless

7

search." (quotes and cite omitted)). Based on Anderson's testimony, then, probable cause arose before he even spoke to Jasper.[5] Since Anderson had probable cause, any evidence he discovered is admissible.[6] His motion to suppress, therefore, should be **DENIED**. Doc. 16.

This R&R is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should

---

[5] Even assuming—contrary to established law—that Anderson did not have probable cause the moment he smelled burnt marijuana, he would have had probable cause to search the car based on Jasper's admission that he had "a little pot." *See, e.g., United States v. Gandara-Nunez*, 564 F.2d 693, 695 (5th Cir. 1977) ("Once possession of marijuana was admitted, the officer had probable cause for a search.").

[6] *See California v. Carney*, 471 U.S. 386, 392-93 (1985) ("When a vehicle is being used on the highways, or if it is readily capable of such use and is found stationary in a place not regularly used for residential purposes—temporary or otherwise—the two justifications for the vehicle exception [to the warrant requirement] come into play. First the vehicle is obviously readily mobile by a turn of the ignition key, if not actually moving. Second, there is a reduced expectation of privacy stemming from its use as a licensed motor vehicle subject to a range of police regulation inapplicable to a fixed dwelling. At least in these circumstances, the overriding societal interests in effective law enforcement justify an immediate search before the vehicle and its occupants become unavailable."); *see also, e.g., United States v. Rodriguez*, 762 F. App'x 938, 942 (11th Cir. 2019) ("[I]f a vehicle is readily mobile and there is probable cause to believe that it contains contraband, law enforcement may search the vehicle without a warrant. *United States v. Baldwin*, 774 F.3d 711, 720 (11th Cir. 2014). This automobile exception does not contain a special exigency requirement beyond a showing that the vehicle is mobile. *United States v. Watts*, 329 F.3d 1282, 1285 (11th Cir. 2003). Mobility is inherent if the vehicle 'reasonably appear[s] to be capable of functioning.' *Id.* at 1286 (quotation omitted.").

be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this <u>2nd</u> day of March, 2020.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA